IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



UNITED STATES OF AMERICA     §
                              §
v.                                §
                              §
             (1)             §
a/k/a                       §
MARK JORDAN (2)          §

SEALED
No. 4:18CR

Judge

**INDICTMENT**

THE UNITED STATES GRAND JURY CHARGES:

**Count One**

Violation: 18 U.S.C. § 1349
(Conspiracy to Commit Honest Services
Wire Fraud in violation of 18 U.S.C. §§
1343, 1346)

## A.    Introduction

At all times material to this Indictment:

1.    The City of Richardson, Texas ("City of Richardson" or "the City"), was a local government and political subdivision of the State of Texas and was governed by a mayor and a city council.

2.    ████ ████ defendant, who at all relevant times was known as ████ ████ and will thus be referred to as "████" in this Indictment, was the mayor of the City of Richardson from May 2013 through April 2015. As mayor, ████ was an agent of the City of Richardson and a voting member of the Richardson City Council.

Additionally, ██████ owed a fiduciary duty to the citizens of the City to perform the duties and responsibilities of her office free from corrupt influence.

3.        ██████ duties as mayor included voting, along with the other members of the Richardson City Council, on proposals for zoning changes within the limits of the City.  She also voted on requests to authorize the City Manager of the City of Richardson to negotiate contracts with land developers to reimburse land developers, with government funds, for expenses incurred on developments within the City.

4.        ██████ earned $50 per meeting as mayor of the City of Richardson.  In 2013 and 2014, ██████ earned approximately $2,600 each year working for the City of Richardson.

5.        **Mark Jordan** ("**Jordan**"), defendant, was a commercial real-estate developer.  One of his companies, JP Realty Partners LLC ("JP Partners"), acquired and developed commercial real estate.  In 2011, JP Partners, along with a separate entity, KBS Strategic Opportunity REIT Richardson Portfolio JV, LLC, formed JP-KBS Richardson Holdings, LLC.  JP-KBS Richardson Holdings, LLC, with **Jordan** acting as managing partner, purchased approximately 40 acres of developable land, along with two office properties (collectively called the "Palisades Property"), located in the City of Richardson, the majority of which was located in the Eastern District of Texas.  The Palisades Property was adjacent to the Canyon Creek and Prairie Creek neighborhoods in Richardson, Texas.  **Jordan** also owned and controlled Sooner National Property Management, LP.

6.      The Development and Economic Development Agreement request ("DEDA Request") was a request **Jordan** caused to be submitted to the City of Richardson that requested up to $47,000,000 in reimbursements for construction and infrastructure expenses related to the Palisades Property, which included a 25-year, 50% tax rebate for infrastructure costs.

7.      ▮▮▮▮ controlled a Wells Fargo bank account ending in 1020 ("Wells Fargo account 1"). ▮▮▮▮ also controlled a Wells Fargo bank account ending in 4928 ("Wells Fargo account 2").

8.      "The Contractor" was an individual known to the Grand Jury. The Contractor owned and operated "the Company," which was located in McKinney, Texas, in the Eastern District of Texas. The Company was also known to the Grand Jury.

9.      "The Employee" was an individual known to the Grand Jury. The Employee worked for Sooner National Property Management, LP as a leasing agent from in or around 2012 through in or around February 2015.

10.     JJ, MM, GS, GK, LG, and JS were individuals known to the Grand Jury. JJ worked for Sooner National Property Management, LP as a Human Resources manager. MM was ▮▮▮▮ husband from on or about April 22, 1989, through on or about January 8, 2015. The City of Richardson hired GS, an attorney, to conduct an ethics investigation into ▮▮▮▮ and **Jordan's** relationship in Spring 2015. JS was an attorney ▮▮▮▮ retained to respond to the City's ethics investigation in Spring 2015. LG was **Jordan's** architect who spoke on **Jordan's** behalf at City meetings concerning

the Palisades Property.  And GK was **Jordan's** accountant who filed **Jordan's** tax returns.

**B.     The Conspiracy**

11.     From in or around May 2013, through on or about July 31, 2015, in the Eastern District of Texas and elsewhere, ▉▉▉▉ and **Jordan** conspired, combined, and agreed to devise a scheme and artifice to deprive the citizens of the City of Richardson, through fraud, of the honest services of ▉▉▉▉ the mayor of the City of Richardson, and, for the purpose of executing the scheme and artifice, caused a wire communication to be transmitted in interstate commerce, a violation of 18 U.S.C. §§ 1343 and 1346.

**C.     The Purpose of the Conspiracy**

12.     The purpose of the conspiracy was for the defendants to use ▉▉▉▉ official position as the mayor of the City of Richardson to benefit and enrich themselves through bribery.

**D.     Manner and Means of the Conspiracy**

It was part of the manner and means of the conspiracy and the scheme that:

13.     At the time **Jordan** and his partners purchased the Palisades Property, the Palisades Property was zoned for local retail and office use and for 300 condominiums; it was not zoned for apartments.  Over time, **Jordan** envisioned transforming the Palisades Property into a mixed-use development that included, among other things, single-family units ("houses") and apartments (collectively referred to as the "Palisades Project").  According to **Jordan's** representative, LG, the Palisades Project would not work without

the apartments "because of what apartments contribute" to the development.  In Fall 2012 and Spring 2013, **Jordan** began holding collaborative planning sessions involving local Richardson stakeholders (e.g., homeowners' associations, City officials, and others), at which **Jordan** and LG presented **Jordan's** plans for the Palisades Project.

14.   Before being elected mayor of the City of Richardson,          served on the Richardson City Council.  On November 27, 2012,          announced that she intended to run for mayor of the City in 2013.  During the mayoral campaign in Spring 2013,          publicly stated that there should be no more apartments built in Richardson near Richardson neighborhoods.          her then-husband MM, and her children in fact lived in the Canyon Creek neighborhood immediately next to the Palisades Property.  In one of her campaign advertisements,          stated that "[w]hen it comes to apartments, you know that          has always said we do not need more apartments near our neighborhoods. Period."          was elected mayor of the City of Richardson by a majority vote on May 11, 2013, and began her term on May 20, 2013.

15.   In mid-to-late November 2013, shortly before the first vote of the Richardson City Council on **Jordan's** proposed zoning changes for the Palisades Property, **Jordan** and          secretly communicated and coordinated with each other concerning the Palisades Project through, among other means, email communications. These email exchanges caused wire communications to be made in interstate commerce.

16.   On December 9, 2013, the Richardson City Council held a public hearing before voting on **Jordan's** requested zoning changes for the Palisades Property.  Many

citizens of Richardson appeared for the hearing; the overwhelming number of citizens who spoke at the hearing were adamantly opposed to the proposed increase in apartment units allowed by the proposed zoning change.  Despite this, and despite ████████ public campaign pledge to oppose the construction of any new apartments near Richardson neighborhoods, ████████ spoke and voted in favor of **Jordan's** zoning changes.  At two more Richardson City Council meetings on January 27 and June 9, 2014, ████████ again spoke and voted in favor of additional zoning changes requested by **Jordan** that allowed for the construction of a total of 1,090 new apartment units on the Palisades Property.  And on September 22, 2014, ████████ voted to authorize the City Manager of the City of Richardson to negotiate with **Jordan** and his business partners on a deal that would obligate the City of Richardson to reimburse **Jordan** and his partners for various construction and infrastructure expenses associated with the Palisades Project up to $47,000,000.

17.     In exchange for ████████ favorable support and votes regarding the Palisades Property, **Jordan** offered and gave to ████████ and ████████ accepted: monetary payments, which caused interstate wire communications, payments for renovations of ████████ residence, luxury hotel stays, flight upgrades, meals, lucrative employment with one of **Jordan's** companies that involved the Palisades Property, intimate sexual contact, and other personal benefits and things of value.

18.     ████████ concealed things of value she accepted from **Jordan** by knowingly and willfully omitting them from a Local Government Officer Conflicts Disclosure

Statement ("Conflicts Form") she was statutorily required to complete under Chapter 176 of the Local Government Code. ▮▮▮▮ failed repeatedly to file the mandatory Conflicts Form in connection with the things of value ▮▮▮▮ accepted from **Jordan**. ▮▮▮▮ also made false and misleading statements to others, including Richardson City Council members and the Internal Revenue Service ("IRS"), an agency of the United States Treasury Department, about the things of value she accepted from **Jordan**, all designed to conceal the true nature of their corrupt relationship.

19. **Jordan** concealed things of value he offered and gave to ▮▮▮▮ by knowingly and willfully causing them to be omitted from **Jordan's** sworn response to interrogatories in a Denton County District Court Filing. **Jordan** also caused the Contractor to generate a fraudulent invoice concealing **Jordan's** payments for ▮▮▮▮ home renovations. Additionally, **Jordan** made false and misleading statements to others, including the IRS, about the things of value he offered and gave to ▮▮▮▮ all designed to conceal the true nature of their corrupt relationship.

**E.   Representative Acts of the Conspiracy and the Scheme and Artifice**

20. On or about the following dates in furtherance of the conspiracy, in the Eastern District of Texas and elsewhere, the defendants caused the following acts to be committed:

a. During her campaign for election to the office of the mayor of the City of Richardson, ▮▮▮▮ public position was that she was opposed to zoning that permitted construction of apartments next to neighborhoods. Specifically, ▮▮▮▮

authorized and caused to be distributed the following statements in campaign
advertisements:

> **When it comes to apartments**, you know that ██ has always said we do
> not need more apartments near our neighborhoods. <u>Period.</u> (emphasis in
> original).
>
> For the record, ██ has never supported building apartments in or
> adjacent to our neighborhoods. . . ██ is one of our most pro-
> neighborhood councilmembers. . . .She stands with – and for – our
> neighborhoods.

    b.    On or about November 5, 2013, **Jordan** caused a presentation to be
made to the City of Richardson Plan Commission that requested zoning changes for the
Palisades Property. **Jordan's** zoning request included a decrease in the existing
permissible number of condominiums from 300 to 250, and an increase in the permissible
number of apartments adjacent to the Canyon Creek and Prairie Creek neighborhoods
from 0 to 750.

    c.    On or about November 11, 2013, ██ forwarded a constituent's
email to **Jordan** that contained questions concerning the Palisades Property. On or about
November 14, 2013, **Jordan** responded to ██ at approximately 4:31 am with the
following message:

> See my answer below in RED. Happens to be my favorite color…Don't
> forward this to anyone. Just put it in your words….

On or about November 14, 2013, ██ replied to **Jordan's** email with the following
message, in part:

> Ok….Truly LOL on that one! You're fairly clever at 4:31 am. I'll read
> these responses and will obviously put in my own words. Since we've



already discussed the fact that I have some interesting vocabulary words and it's fairly obvious when other people are writing for me….

d.    On or about November 19, 2013, **Jordan** caused his zoning request for the Palisades Property to be modified to request zoning that allowed for the construction of 600 apartments adjacent to the Canyon Creek and Prairie Creek neighborhoods.

e.    On or about November 21, 2013,          sent an email to **Jordan** in connection to **Jordan's** proposed zoning changes in which she stated, "FTR [for the record], good thing I had such a fun afternoon yesterday. Because last night the prairie creek mob hit me hard! You were probably enjoying barbecue and chillaxing. I was taking bullets for you! ☺". The "prairie creek mob" referred to residents of the Prairie Creek neighborhood in the City of Richardson that were vocally opposed to the zoning changes requested by **Jordan**.

f.    On or about December 9, 2013,          contrary to her campaign position and over the objection of 126 individuals present at the Richardson City Council meeting who expressed their opposition, voted in favor of the zoning change that allowed for the construction of 600 apartments on the Palisades Property adjacent to the Canyon Creek and Prairie Creek neighborhoods. Only nine individuals present at the meeting were in favor of the proposed zoning change and expressed their support.

g.    On or about January 6, 2014, **Jordan** paid for          to stay with him at the Holiday Inn Express in Plano, Texas.

h.      Between on or about January 14, 2014, to on or about January 16, 2014, **Jordan** paid for ████ to stay with him and ski at the Deer Valley Resort at Park City, Utah, in the approximate amount of $7,206.66.

i.      On or about January 27, 2014, at a Richardson City Council meeting, ████ voted in favor of the amended zoning change for the Palisades Property that maintained the permissible number of apartments adjacent to the Canyon Creek and Prairie Creek neighborhoods at 600, and allowed for additional changes including a landscape buffer, four acre park, driveways, a ring road, and the construction of single family homes. ████ did not disclose to the Richardson City Council or the public during or prior to the meeting that **Jordan** had offered and given to her, and she had accepted, things of value from **Jordan**.

j.      On or about April 16, 2014, **Jordan** paid for ████ to stay with him at the Corde Valle Resort at San Marten, California, in the amount of $996.82.

k.      On or about April 17, 2014, **Jordan** paid for ████ to stay with him at The Ritz-Carlton at Marina del Ray, California, in the amount of $629.49.

l.      On or about April 18, 2014, **Jordan** paid for ████ upgrade to first class on American Airlines Flight 2410 from Los Angeles International Airport to Dallas-Fort Worth International Airport in the amount of $75.00

m.      On or about May 20, 2014, **Jordan**, at a Richardson City Plan Commission meeting, caused a modification request to be submitted to the commission regarding the Palisades Property zoning that included an increase in the number of

permissible apartments adjacent to the Canyon Creek and Prairie Creek neighborhoods from 600 to 1400.

n.      On or about June 3, 2014, at a Richardson City Plan Commission meeting, the proposed number of permissible apartments for the Palisades Property zoning changes was reduced to 1200.

o.      On or about June 9, 2014, **Jordan** and ▆▆▆ at a Richardson City Council meeting, agreed to reduce the number of permissible apartments for the proposed Palisades Property zoning changes from 1200 to 1090.

p.      On or about June 9, 2014, ▆▆▆ contrary to her campaign position and over the objection of 651 individuals present at the meeting who expressed their opposition, voted at a Richardson City Council meeting to approve the Palisades Property zoning change that allowed for the construction of 1090 new apartments on the Palisades Property adjacent to the Canyon Creek and Prairie Creek neighborhoods.  Only one individual was present at the meeting who was in favor of the proposed zoning change. ▆▆▆ did not disclose to the Richardson City Council or the public during or prior to the meeting that **Jordan** had offered and given to her, and she had accepted, things of value from **Jordan**.

q.      Between on or about June 25, 2014, to on or about June 27, 2014, **Jordan** paid for ▆▆▆ to stay with him at The Ritz-Carlton at Laguna Niguel, California, in the amount of $2,217.75.

r. Between on or about August 13, 2014, to on or about August 15, 2014, **Jordan** paid for ▆▆ to stay with him at the Montage at Laguna Beach, California, in the amount of $2,511.13.

s. On or about September 8, 2014, at a Wells Fargo bank branch located at 1500 Custer Road, Plano, Texas, in the Eastern District of Texas, ▆▆ opened Wells Fargo account 1 in her name and designated herself as the sole signatory. ▆▆ caused an interstate wire communication to be made when she opened the account.

t. On or about September 9, 2014, at approximately 1:19 pm, **Jordan** made a $1,000 ATM cash withdrawal from his Wells Fargo bank account at 1500 Custer Road in Plano, Texas, located in the Eastern District of Texas.

u. On or about September 9, 2014, at approximately 2:23 pm, ▆▆ made a $300 ATM cash deposit into her Wells Fargo account 1 at 1421 North Central Expressway in Plano, Texas, located in the Eastern District of Texas.

v. On or about September 15, 2014, ▆▆ made a $1,000 ATM cash deposit into her Wells Fargo account 1 at Santa Rosa, Florida.

w. On or about September 16, 2014, **Jordan** made an $800 ATM cash withdrawal from his Wells Fargo account at 18190 North Dallas Tollway in Dallas, Texas, located in the Eastern District of Texas.

x.      Between on or about September 16, 2014, to on or about September 18, 2014, **Jordan** paid for ▮▮▮ to stay with him at The Pearl at Rosemary Beach, Florida, in the amount of $1,393.52.

y.      On or about September 22, 2014, ▮▮▮ voted at a Richardson City Council meeting to authorize the City Manager for the City of Richardson to negotiate and execute **Jordan's** DEDA request for the City to reimburse JP-KBS Richardson Holdings LLC up to $47,000,000 for construction and infrastructure expenses related to the Palisades Property, and to provide a 25-year, 50% tax rebate for infrastructure costs. ▮▮▮ did not disclose to the Richardson City Council or the public during or prior to the meeting that **Jordan** had offered and given to her, and she had accepted, things of value from **Jordan**.

z.      On or about September 26, 2014, **Jordan** made two cash withdrawals in the respective amounts of $800 and $3,000 from his Wells Fargo account at 18190 Dallas Tollway in Dallas, Texas, located in the Eastern District of Texas.

aa.     On or about September 29, 2014, ▮▮▮ made an $800 ATM cash deposit to her Wells Fargo account 1 at 1421 North Central Expressway in Plano, Texas, located in the Eastern District of Texas.

bb.     On or about October 8, 2014, at a Wells Fargo bank branch located at 1500 Custer Road, Plano, Texas, in the Eastern District of Texas, ▮▮▮ opened Wells Fargo account 2 in her name and designated herself as the sole signatory. ▮▮▮ caused an interstate wire communication to be made when she opened the account.

      cc.    On or about October 17, 2014, at approximately 3:49 pm, **Jordan** made an $800 ATM cash withdrawal from his Wells Fargo account at 5936 West Park Boulevard in Plano, Texas, located in the Eastern District of Texas.

      dd.    On or about October 17, 2014, at approximately 4:00 pm, ▮ made a $200 ATM cash deposit to her Wells Fargo account 2 at 212 Coit Road in Plano, Texas, located in the Eastern District of Texas, which was approximately 5 miles from 5936 West Park Boulevard in Plano, Texas, where **Jordan** had withdrawn $800 approximately 11 minutes earlier.

      ee.    On or about October 24, 2014, at approximately 1:13 pm, **Jordan** made a $3,500 cash withdrawal from his Wells Fargo account at 1421 North Central Expressway in Plano, Texas, located in the Eastern District of Texas.

      ff.    On or about October 24, 2014, at approximately 1:14 pm, ▮ made a $1,000 ATM cash deposit to her Wells Fargo account 2 at 1421 North Central Expressway in Plano, Texas, located in the Eastern District of Texas, which was the same location **Jordan** had withdrawn $3,500 approximately one minute earlier.

      gg.    On or about October 24, 2014, at approximately 2:48 pm, ▮ made a $2,800 ATM cash deposit to her Wells Fargo account 2 at 1421 North Central Expressway in Plano, Texas, located in the Eastern District of Texas.

      hh.    On or about October 31, 2014, ▮ made a $1,409 ATM cash deposit to her Wells Fargo account 2 at 212 Coit Road in Plano, Texas, located in the Eastern District of Texas.

ii.     Between on or about October 31, 2014, through on or about November 30, 2014, **Jordan** caused the Contractor to perform renovations at ▮▮▮▮▮ residence, including new hardwood floors, staircase, carpeting, painting, and pool repair and maintenance.

jj.     On or about November 5, 2014, **Jordan** made a $7,000 cash withdrawal from his Wells Fargo account at 1421 North Central Expressway in Plano, Texas, located in the Eastern District of Texas.

kk.    On or about November 7, 2014, ▮▮▮▮ made a $3,900 ATM cash deposit to her Wells Fargo account 2 at 212 Coit Road in Plano, Texas, located in the Eastern District of Texas.

ll.      On or about November 17, 2014, **Jordan** made a $5,000 cash withdrawal from his Wells Fargo account at 1421 North Central Expressway in Plano, Texas, located in the Eastern District of Texas.

mm.   On or about November 20, 2014, ▮▮▮▮ made two ATM cash deposits in the amounts of $1,840 and $3,000, both to her Wells Fargo account 2 at 3411 Custer Parkway in Richardson, Texas, located in the Eastern District of Texas.

nn.    On or about November 26, 2014, at approximately 2:11 pm, **Jordan** made an $800 ATM cash withdrawal from his Wells Fargo account at 5936 West Park Boulevard in Plano, Texas, located in the Eastern District of Texas.

oo.    On or about November 26, 2014, at approximately 2:30 pm, ▮▮▮▮ made a $450 ATM cash deposit into her Wells Fargo account 2 at 212 Coit Road in

Plano, Texas, located in the Eastern District of Texas, which was approximately 5 miles from 5936 West Park Boulevard in Plano, Texas, where **Jordan** had withdrawn $800 approximately 19 minutes earlier.

        pp.     Between on or about December 12, 2014, through on or about December 13, 2014, **Jordan** gave        a check in the amount of $40,000 that she deposited in her Wells Fargo account 2 at 1421 North Central Expressway in Plano, Texas, in the Eastern District of Texas.

        qq.     On or about December 23, 2014, **Jordan** knowingly caused the Contractor to create a fraudulent invoice, number 131-132, that falsely reflected that the Contractor had performed work, valued at $24,030.02, at one of **Jordan's** commercial properties in Irving, Texas, when in fact the Contractor had renovated residence.

        rr.     On or about January 4, 2015, **Jordan** made an $800 ATM cash withdrawal from his Wells Fargo account at 5936 West Park Boulevard in Plano, Texas, located in the Eastern District of Texas.

        ss.     On or about January 5, 2015, at approximately 1:32 pm, **Jordan** made an $800 ATM cash withdrawal from his Wells Fargo account at 212 Coit Road in Plano, Texas, located in the Eastern District of Texas.

        tt.     On or about January 5, 2015, at approximately 4:33 pm, made a $1,250 ATM cash deposit into her Wells Fargo account 2 at 212 Coit Road in Plano, Texas, located in the Eastern District of Texas.

      uu.    On or about January 11, 2015,       falsely represented herself as JJ, the then-Human Resources manager at Sooner National Property Management, LP, to an employee at a furniture store in Dallas, Texas.       selected approximately $74,000 worth of furniture for **Jordan** to later purchase. On invoices dated between on or about January 11, 2015, and on or about March 29, 2015,       caused JJ's name to be referenced as the individual who selected and ordered the furniture with a corresponding cellular telephone number that in fact belonged to       not JJ.

      vv.    On or about January 14, 2015, at approximately 1:24 pm,       made a $300 ATM cash deposit into her Wells Fargo account 2 at 3411 Custer Parkway in Richardson, Texas, located in the Eastern District of Texas.

      ww.    On or about January 14, 2015, at approximately 6:58 pm, **Jordan** made an $800 ATM cash withdrawal from his Wells Fargo account at 995 West Bethany in Allen, Texas, located in the Eastern District of Texas.

      xx.    On or about February 9, 2015, **Jordan** issued a check drawn on a Sooner National Property Management, LP checking account to the Company in the amount of $24,030.02 for payment for renovations completed at       home.

      yy.    On or about February 23, 2015, **Jordan** made an $800 ATM cash withdrawal from his Wells Fargo account at 1421 North Central Expressway in Plano, Texas, located in the Eastern District of Texas.

zz.    On or about February 24, 2015, ▓▓▓▓ made a $240 ATM cash deposit into her Wells Fargo account 2 at 3411 Custer Parkway in Richardson, Texas, located in the Eastern District of Texas.

aaa.    On or about March 2, 2015, **Jordan** offered ▓▓▓▓ employment at **Jordan's** business, Sooner National Property Management, LP, as a leasing agent. **Jordan** chose to replace the departing Employee – a leasing agent who was licensed by the State of Texas Real Estate Commission and whose annual salary was approximately $70,000 – with ▓▓▓▓ who was not licensed and had no experience or education relevant to leasing commercial property. **Jordan** offered ▓▓▓▓ an annual salary of $150,000, a signing bonus of $15,000, and discretionary and year-end bonuses.

bbb.    On or about March 13, 2015, **Jordan** gave ▓▓▓▓ a check in the amount of $9,617.20, which was the post-tax amount of the offered and accepted $15,000 signing bonus.

ccc.    On or about March 16, 2015, ▓▓▓▓ in an attempt to conceal the true nature of her corrupt relationship with **Jordan**, caused MM, her ex-husband, to file a fraudulent and incomplete 2014 U.S. Individual Income Tax Return, Form 1040 (the "2014 Tax Return"). ▓▓▓▓ failed to identify and include any of the 2014 monetary payments **Jordan** provided to her in the 2014 Tax Return.

ddd.    On or about March 19, 2015, ▓▓▓▓ in an attempt to conceal the things of value offered by **Jordan** and accepted by her, knowingly submitted a fraudulent Conflicts Disclosure Statement to the City of Richardson that falsely omitted things of

value offered by **Jordan** and accepted by ▮▮▮▮  ▮▮▮▮ fraudulent submission reflected she had accepted no gifts with an aggregate value of $250 or more offered by **Jordan**.

eee.    On or about April 8, 2015, the City of Richardson retained an attorney, GS, to conduct an independent investigation into alleged ethical violations concerning the events surrounding the approval of the rezoning for the Palisades Property.

fff.    On or about April 9, 2015, GS caused a letter to be sent to JS, ▮▮▮▮ then-attorney, in which GS requested to know when ▮▮▮ "entered into a financial or other business relationship with **Jordan**/JP Realty." The letter also asked "If ▮▮▮▮ received money or anything of value from such developer [**Jordan**], we would like to have it described together with the date it was paid or provided."

ggg.    On or about April 17, 2015, ▮▮▮ in an attempt to conceal the true nature of the corrupt relationship between **Jordan** and ▮▮▮ and the things of value offered by **Jordan** and accepted by ▮▮▮ caused her then-attorney, JS, to submit a fraudulent letter to GS that falsely stated:

> At no time [between November 5, 2013 and June 9, 2014] was there any suggestion of, offer of, acceptance, or any implication that any form of personal financial benefit would be provided to the Mayor [▮▮▮   nor would it have been accepted had it been made.

▮▮▮▮ letter submitted to GS through her then-attorney, JS, neither identified nor disclosed any of the things of value offered by **Jordan** that were accepted by ▮▮▮

hhh.   On or about April 20, 2015,  in an attempt to conceal the

true nature of the corrupt relationship between **Jordan** and and the things of

value offered by **Jordan** and accepted by sent an email to a journalist in which

she stated, among other things, the following to the below question:

> Question: Did you have an inappropriate relationship with JP Partners resulting in
>         a conflict of interest?

  No

iii.   On or about April 28, 2015, GS issued a report of his investigation in

which he stated:

> We spoke by telephone with **Jordan** at J.P. Realty Partners, Ltd., who
> confirmed that neither he, nor his company had a financial or other business
> relationship with the Mayor [        prior to October 2014. He [**Jordan**]
> also stated that the Mayor did not receive any financial or other benefit from
> him or his company prior to her employment in 2015. **Mr. Jordan** also
> recalled making a $500 political campaign contribution to the Mayor for her
> previous election and made an equal donation to her opponent.

jjj.   On or about April 28, 2015, at a Richardson City Council

Special Called meeting, "addressed the conflict of interest ethics investigation" regarding

the Palisades and **Jordan**.  She stated the following about her relationship with **Jordan**.

> Much has been discussed about my relationship with the developer,
> **Jordan**. . .I acknowledge that I have a personal relationship with **Mark**.
> We became friends through the zoning process and that friendship has
> continued.  As he has done for other friends, when I needed a job and he
> had an opening, he offered me the opportunity….

In an attempt to mislead the citizens of the City of Richardson and conceal the true nature

of her corrupt relationship with **Jordan** and the things of value offered by **Jordan** that

were accepted by her,        knowingly and willfully failed to disclose to the

Richardson City Council or to the public the true nature of the corrupt relationship,

including the things of value she had accepted from **Jordan**.

kkk.    On or about April 29, 2015, **Jordan** executed the DEDA on behalf

of JP-KBS Richardson Holdings, LLC as its managing member.

lll.    On or about May 7, 2015, the City of Richardson city manager

executed the DEDA on behalf of the City of Richardson.

mmm. On or about July 7, 2015, **Jordan**, in an attempt to conceal the true

nature of the corrupt relationship between **Jordan** and        knowingly executed

under oath the "Answers to Respondent's Written Interrogatories to Petitioner" that

falsely reflected he had neither offered nor gave        any "gifts, transfers of funds, or

money in excess of $250 since January 1, 2010," when in fact **Jordan** knew that he had

given and offered        such things of value since January 1, 2010.  Additionally with

the intent to conceal the true nature of the corrupt relationship, **Jordan** knowingly under

oath caused the "Answers to Respondent's Written Interrogatories to Petitioner" to

falsely reflect that **Jordan** did not engage in "intimate sexual contact" with        until

"July 2014," when in fact **Jordan** knew that he had engaged in intimate sexual contact

with        as early as in or about January 2014.

nnn.    On or about July 7, 2015, **Jordan** caused the fraudulent "Answers to

Respondent's Written Interrogatories to Petitioner" to be filed in Denton County District

Court, located in the Eastern District of Texas.

ooo.   On or about July 20, 2016, **Jordan**, on behalf of Sooner National Property Management, LP and in an attempt to conceal the true nature of the corrupt relationship between **Jordan** and ▆▆▆▆ caused GK, **Jordan's** accountant, to file a fraudulent 2015 U.S. Return of Partnership Income, Form 1065 (the "2015 Tax Return"). **Jordan** caused GK to depreciate and claim the $24,030.02 expense to renovate ▆▆▆▆ residence as a business deduction in the approximate amount of $14,000 concerning the Company's fraudulent invoice, number 131-132, in the 2015 Tax Return.

In violation of 18 U.S.C. § 1349.

## Counts Two through Four

|  |  |
|---|---|
| <u>Violation</u>: | 18 U.S.C. §§ 1343, 1346 (Honest Services Wire Fraud) |

### A.    Introduction

1.    The grand jury re-alleges the allegations contained in Paragraphs 1 through 10 and Paragraphs 13 through 20 of Count One of this Indictment and further alleges that:

### B.    The Scheme and Artifice to Defraud

2.    ▆▆▆▆ and **Jordan** devised a scheme and artifice to deprive the citizens of the City of Richardson, through fraud, of their right to the honest services of the mayor of the City of Richardson free from corrupt influence, and, in execution of the scheme

and artifice, caused writings, signs, and signals to be transmitted by means of wire communications in interstate commerce.

**C.    The Purpose of the Scheme and Artifice**

3.    The purpose of the scheme and artifice was for the defendants to use ▮▮▮▮▮ official position as the mayor of the City of Richardson to benefit and enrich themselves through bribery.

**D.    The Execution of the Scheme and Artifice**

4.    On or about the following dates, in the Eastern of District of Texas and elsewhere, the following defendants, for the purpose of executing the scheme and artifice, caused the following wire transmissions from the Eastern District of Texas to the State of Minnesota, regarding the following bank action and transactions in the following amounts, to be made in interstate commerce:

| Count | Defendant | Date | Bank Action |
|-------|-----------|------|-------------|
| 2 | ▮▮▮▮ | September 8, 2014 | Opened Wells Fargo account 1 ending in 1020 |

| Count | Defendant | Date | Bank Transaction Type | Amount |
|-------|-----------|------|----------------------|--------|
| 3 | **Jordan** | September 9, 2014 | ATM Cash Withdrawal | $1,000 |
| 4 | ▮▮▮▮ | September 9, 2014 | ATM Cash Deposit | $300 |

All in violation of 18 U.S.C. §§ 1343 and 1346.

<u>Count Five</u>

<u>Violation:</u> 18 U.S.C. § 371 (Conspiracy
to Commit Bribery Concerning A
Program Receiving Federal Funds)

**A.     Introduction**

1.     The grand jury re-alleges the allegations contained in Paragraphs 1 through

10 and Paragraphs 13 through 19 of Count One of this Indictment and further alleges the

following.

2.      At all times material to this Indictment, the City of Richardson was a local

government that received federal assistance in excess of $10,000 during each of calendar

years 2013, 2014, and 2015.

**B.     Conspiracy**

3.     Between in or around May 2013, through on or about July 31, 2015, in the

Eastern District of Texas and elsewhere, ▆▆▆▆ conspired, combined and agreed with

**Jordan** to:

(a) corruptly accept and agree to accept a thing of value from **Jordan**, intending to

be influenced and rewarded by **Jordan** in connection with a business,

transaction, and series of transactions with the City of Richardson involving a

thing of value of $5,000 or more (a violation of 18 U.S.C. § 666(a)(1)(B)); and

(b) corruptly give, offer, and agree to give a thing of value to ▆▆▆▆ with the

intent to influence and reward ▆▆▆▆ an agent of the City of Richardson, in

connection with a business, transaction, and series of transactions with the City

of Richardson involving a thing of value of $5,000 or more (a violation of 18

U.S.C. § 666(a)(2)).

## C.  Overt Acts of the Conspiracy

4.  The Grand Jury re-alleges the facts contained in Paragraph 20 of Count One

of this Indictment.

In violation of 18 U.S.C. § 371.

### Count Six

Violation:  18 U.S.C. § 666(a)(1)(B)
(Bribery Concerning Program Receiving
Federal Funds)

1.  The grand jury re-alleges the allegations contained in Paragraphs 1 through

10 and Paragraphs 13 through 20 of Count One of this Indictment, Paragraph 2 of Count

Five of this Indictment, and further alleges the following.

2.  Between in or around May 2013, through on or about July 31, 2015, in the

Eastern District of Texas and elsewhere,           defendant, corruptly accepted a thing

of value from Jordan, intending to be influenced and rewarded by Jordan in connection

with a business, transaction, and series of transactions with the City of Richardson

involving a thing of value of $5,000 or more.

In violation of 18 U.S.C. § 666(a)(1)(B).

Indictment –          & Jordan
Page 25 of 30

## Count Seven

Violation:  18 U.S.C. § 666(a)(2)
(Bribery Concerning Program Receiving
Federal Funds)

1.      The grand jury re-alleges the allegations contained in Paragraphs 1 through

10 and Paragraphs 13 through 20 of Count One of this Indictment, Paragraph 2 of Count

Five of this Indictment, and further alleges the following.

2.      Between in or around May 2013, through on or about July 31, 2015, in the

Eastern District of Texas and elsewhere, **Jordan**, defendant, corruptly gave and offered a

thing of value to ▮▮▮▮ with the intent to influence and reward ▮▮▮▮ an agent of the

City of Richardson, in connection with a business, transaction, and series of transactions

with the City of Richardson involving a thing of value of $5,000 or more.

In violation of 18 U.S.C. § 666(a)(2).

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

### Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461

As the result of committing the offenses alleged in this Indictment, the defendants

shall forfeit to the United States:

any property, real or personal, which constitutes or is derived from proceeds

traceable to a violation of any offense constituting "specified unlawful activity" (as

defined in 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense, including,

but not limited to, the following:

### Cash Proceeds

A money judgment in United States currency and all interest and proceeds

traceable thereto, in that such sum in aggregate is property constituting, or derived from,

proceeds obtained directly or indirectly, as the result of the offenses alleged in this

Indictment.

### Substitute Assets

If any of the property described above as being subject to forfeiture, as a result of

any act or omission of the defendants-

- (a)  cannot be located upon the exercise of due diligence;

- (b)  has been transferred or sold to, or deposited with a
third person;

- (c)  has been placed beyond the jurisdiction of the court;

- (d)  has been substantially diminished in value; or

- (e)  has been commingled with other property which
cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of

any other property of the defendants up to the value of the above forfeitable property,

including but not limited to all property, both real and personal owned by the defendants.

By virtue of the commission of the offenses alleged in this Indictment, any and all

interest the defendants have in the above-described property is vested in and forfeited to

the United States.

A TRUE BILL

GRAND JURY FOREPERSON

JOSEPH D. BROWN
UNITED STATES ATTORNEY

CHRISTOPHER A. EASON                    Date    5-10-18
Assistant United States Attorney
Oklahoma Bar No. 20197

G.R. JACKSON
Assistant United States Attorney
Texas Bar No. 00784874

BRADLEY VISOSKY
Assistant United States Attorney
Texas Bar No. 24034727

101 East Park Boulevard, Suite 500
Plano, Texas 75074
Telephone: (972) 509-1201

ATTORNEYS FOR THE UNITED STATES

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:18CR |
| | § | Judge |
| ▮▮▮▮ (1) | § | |
| a/k/a ▮▮▮ | § | |
| MARK JORDAN (2) | § | |

## NOTICE OF PENALTY

### Count One

Violation:     18 U.S.C. § 1349
              (Conspiracy to Commit Honest Services Wire Fraud)

Penalty:      A fine of not more than $250,000, or twice the gross pecuniary gain
              or loss, and/or imprisonment for not more than 20 years, and a term
              of supervised release for not more than 5 years.

Special
Assessment:   $100.00

### Counts Two through Four

Violation:     18 U.S.C. §§ 1343, 1346
              (Honest Services Wire Fraud)

Penalty:      For each count:  A fine of not more than $250,000, or twice the
              gross pecuniary gain or loss, and/or imprisonment for not more than
              20 years, and a term of supervised release for not more than 5 years.

Special
Assessment:   For each count:  $100.00



## Count Five

Violation:        18 U.S.C. § 371
                  (Conspiracy)

Penalty:          A fine of not more than $250,000, or twice the gross pecuniary gain
                  or loss, and/or imprisonment for not more than 5 years, and a term of
                  supervised release for not more than 3 years.

Special
Assessment:       $100.00

## Count Six

Violation:        18 U.S.C. § 666(a)(1)(B)
                  (Bribery Concerning Program Receiving Federal Funds)

Penalty:          A fine of not more than $250,000, or twice the gross pecuniary gain
                  or loss, and/or imprisonment for not more than 10 years, and a term
                  of supervised release for not more than 3 years.

Special
Assessment:       $100.00

## Count Seven

Violation:        18 U.S.C. § 666(a)(2)
                  (Bribery Concerning Program Receiving Federal Funds)

Penalty:          A fine of not more than $250,000, or twice the gross pecuniary gain
                  or loss, and/or imprisonment for not more than 10 years, and a term
                  of supervised release for not more than 3 years.

Special
Assessment:       $100.00